UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| PRIMARY CONSTRUCTION, INC., | |
| Plaintiff, | |
| v. | CAUSE NO.: 2:20-CV-371-TLS |
| CITY OF EAST CHICAGO, | |
| Defendant. | |

## OPINION AND ORDER

Beginning in 2013, the Plaintiff Primary Construction, Inc. (Primary Construction), owned by Adrienne Moss, has been awarded construction contracts with the Defendant City of East Chicago. However, on October 16, 2020, the Plaintiff filed a Complaint [ECF No. 1] in this Court, alleging the Defendant racially discriminated against it in enforcement of a 2017 contract for work at 3610 Alder Street in East Chicago, Indiana. This matter is before the Court on Defendant's, City of East Chicago, Motion for Summary Judgment [ECF No. 36], which is fully briefed and ripe for ruling. For the reasons set forth below, the Court GRANTS the Defendant's motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant may discharge this burden by "either: (1) showing that there is an absence of evidence supporting an essential element of the non-moving party's claim; or (2) presenting affirmative evidence that negates an essential element of the non-moving party's claim." *Hummel v. St. Joseph Cnty. Bd. of Comm'rs*, 817 F.3d 1010, 1016 (7th Cir. 2016)

(citation omitted). In response, the non-movant "must make a sufficient showing on every element of [her] case on which [she] bears the burden of proof; if [she] fails to do so, there is no issue for trial." *Yeatts v. Zimmer Biomet Holdings, Inc.*, 940 F.3d 354, 358 (7th Cir. 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, a court must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Id.* (citation omitted). A court's role "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citations omitted).

## BACKGROUND FACTS[1]

**A.    Contracts**

As referenced in the Complaint, on October 16, 2017, the Defendant and the Plaintiff entered into an agreement for the Plaintiff to perform dwelling and site repairs at 3610 Alder Street in East Chicago, Indiana (Alder Street Contract). *See* Def. Ex. 1, ECF No. 39-1. The Alder Street Contract indicated that the Plaintiff was to perform and complete the dwelling and site repairs "in a proper and workmanlike manner, consistent with the highest standards of professional and construction practices and in full compliance with . . . this Contract." *Id*. at Section 1.1, ¶ 7. The Alder Street Contract provided that "[u]ntil final payment, all parts of the Work shall be subject to inspection and testing by [the City] or its designated representatives." *Id.* at Section 3.1, ¶ A. And "[u]ntil final payment, [the Plaintiff] shall, promptly and without charge, repair, correct, or replace all or any part of the Work that is defective, damaged, flawed,

---

[1] The facts offered by the parties are considered only to the extent they are supported by the properly cited evidence of record.

or unsuitable or that in any way fails to conform strictly to the requirements of [the] Contract." *Id.* at Section 3.1, ¶ B.

As first referenced in its summary judgment response brief, on October 2, 2018, the Plaintiff entered into another agreement to rehab a single-family dwelling located at 4020 Catalpa Street in East Chicago, Indiana (Catalpa Street Contract). *See* Def. Ex. 3, ECF No. 39-3. Pursuant to this agreement, the Plaintiff was to perform and complete the dwelling and site repairs "in a proper and workmanlike manner, consistent with the highest standards of professional and construction practices and in full compliance with this Contract." Def. Ex. 3, Section 1.1, ¶ 7. The Catalpa Street Contract provided that "[u]ntil final payment, all parts of the Work shall be subject to inspection and testing by Owner or its designated representatives." *Id.* at Section 3.1, ¶ A. Under this agreement, "[u]ntil final payment, [the Plaintiff] shall, promptly and without charge, repair, correct, or replace all or any part of the Work that is defective, damaged, flawed, or unsuitable or that in any way fails to conform to strictly to the requirements of [the] Contract." *Id.* at Section 3.1, ¶ B.

**B.    Alder Street and Catalpa Street Project Inspections**

In accordance with the Alder Street and Catalpa Street Contracts, the Plaintiff's work was monitored and inspected by independent contractors, including Julian Sally and Al Espinoza, retained by the Defendant to serve as project manager. *See* Def. Ex. 4 ¶¶ 6, 10, ECF No. 39-4; Pl. Ex. 1 ¶ 29, ECF No. 44. Frank Rivera was the Defendant's director of redevelopment. Pl. Ex. 1 ¶ 8. He averred that it was the project manager's duty to monitor and inspect work performed by general contractors for construction projects within the City of East Chicago to ensure the scope of work was done in accordance with the terms of the contract. *See* Def. Ex. 4 ¶ 6. The project manager was required to provide the Defendant with weekly progress reports for the Alder Street

and Catalpa Street projects, as was required for other City construction projects. *See* Def. Ex. 4 ¶ 15, ECF No. 39-4; Def. Ex. 8, ECF No. 39-8.

The project manager's weekly progress reports of the Plaintiff's projects included observations of any issues with the work performed, as with other contractors. *See* Def. Ex. 4 ¶ 16; Def. Ex. 8. For example, during inspections for the Alder Street and Catalpa Street projects, the Plaintiff was advised when the scope of work was insufficient. *See* Def. Ex. 4 ¶ 11. Also, during the Alder Street project, the Plaintiff was alerted on numerous occasions to the flaws in the completed flooring work, including that the aesthetic quality of the work was not of a professional grade, debris was visible through tile, and patchwork required correction. *See id.*; Def. Ex. 5, ECF No. 39-5; Def. Ex. 6, ECF No. 39-6. Photographic examples of some of those flaws include:




ECF No. 6.

Moss, the Plaintiff's owner, states in her affidavit that project manager Sally told her in the course of the Alder Street project, "The issue is you're a woman and you're Black." Pl. Ex. 1 ¶ 15. Also, Moss avers that Mr. Espinoza required that she repair subflooring and buff and wax the floors, which, according to her, was not within the scope of the contract with the Defendant. *Id.* ¶¶ 40–41. And Moss asserts that she "showed Mr. Espinoza the work of other contractors with the [Defendant] who had not been required to cure alleged defects; he agreed that I was

being held to a different standard." *Id*. ¶ 45. Photographic examples of work by other (unspecified) contractors that were not required to cure alleged defects include:




*See* Pl. Ex. 1, Ex. B, ECF No. 44.

## ANALYSIS

In its Complaint, the Plaintiff seeks compensatory relief from the Defendant based on an alleged violation of 42 U.S.C. § 1981 for racial discrimination, harassment, and retaliation.[2] However, in its response brief, the Plaintiff pursues only its race discrimination claim.[3] Section 1981 provides that "[a]ll persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981; *see also Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 589 U.S. 327, 330 (2020). To

---

[2] However, the Plaintiff waives any argument on a purported harassing environment by the Defendant because it presumes a harassing environment existed in this case without developing any argument on why a harassing environment existed. *See Duncan v. Wis. Dep't of Health & Fam. Servs*., 166 F.3d 930, 934 (7th Cir. 1999) ("It is also true, however, that a party must develop any arguments it wishes this court to consider . . . or they will be deemed waived or abandoned.").

[3] Therefore, the Court grants summary judgment in favor of the Defendant on the Plaintiff's § 1981 harassment and retaliation claims alleged in the Complaint.

establish a prima facie case of racial discrimination under § 1981, a plaintiff must show that (1) she is a member of a racial minority; (2) the defendant had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract. *Pourghoraishi v. Flying J, Inc*., 449 F.3d 751, 756 (7th Cir. 2006).[4]

In the Seventh Circuit, courts "generally apply the same standards to Title VII and section 1981 race discrimination claims at the summary judgment stage." *Smiley v. Columbia Coll. Chi*., 714 F.3d 998, 1002 (7th Cir. 2013) (citation omitted). Plus, discrimination claims under § 1981 require the plaintiff to show the protected characteristic "was a but-for cause of [her] injury." *Lewis v. Ind. Wesleyan Univ*., 36 F.4th 755, 759 (7th Cir. 2022) (citation omitted). "In assessing whether the evidence would permit a reasonable factfinder to conclude that race caused the adverse . . . action, courts must evaluate all evidence as a whole, regardless of whether such evidence is characterized as direct or circumstantial." *Singmuongthong v. Bowen*, 77 F.4th 503, 507 (7th Cir. 2023) (citing *Igasaki v. Ill. Dep't of Fin. & Pro. Regul*., 988 F.3d 948, 957 (7th Cir. 2021); *Ortiz v. Werner Enters., Inc*., 834 F.3d 760, 766 (7th Cir. 2016)).[5]

To prove the alleged violation of § 1981, the Plaintiff argues: (1) its owner is Black thus the Plaintiff has an imputed racial identity; (2) a statement by Julian Sally, a project manager for the Defendant, establishes the Defendant's intent to discriminate; (3) the discrimination dealt

---

[4] However, a municipality, such as the Defendant, may only be liable under § 1981 when the municipality's "official policy or custom was discriminatory." *Smith v. Chi. Sch. Reform Bd. of Trs*., 165 F.3d 1142, 1148 (7th Cir. 1999) (holding that *Monell* applies to § 1981 suits against municipalities). Consequently, to establish the Defendant's liability under § 1981 in this case, the Plaintiff
> must produce evidence of (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the final force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

*Lewis v. City of Chicago*, 496 F.3d 645, 656 (7th Cir. 2007). In this case, the Defendant does not address *Monell*, thus the Court need not address it.

[5] The Plaintiff does not rely on the *McDonnell Douglas* burden-shifting framework in support of its claim. *See Igasaki*, 988 F.3d at 957–58.

with the enforcement of the Plaintiff's contract with the Defendant; (4) that the Defendant required the Plaintiff to do substantially more work on its projects than its non-Black counterparts also establishes discrimination; and (5) the discrimination can be imputed to the Defendant. For the reasons set forth below, the Court finds that the Plaintiff has not established evidence to create a genuine dispute of fact that the Defendant intended to discriminate against the Plaintiff based on its owner's race.

In this case, the evidence when viewed as a whole does not permit a reasonable factfinder to conclude that the Plaintiff was racially discriminated against in the enforcement of its contracts with the Defendant. As to the Plaintiff's first argument, the parties do not dispute that the Plaintiff is a member of a racial minority based on the racial identity of its owner, Adrienne Moss as Black.

Second, the Plaintiff points to *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011), to argue that "there was an intent to discriminate [by the Defendant] on the basis of race due to the admissions of the project manager, Julian Sally," who "flat out told Plaintiff it was being held to a different standard because of its imputed race." Pl. Br. 6–7. In *O'Leary*, the Seventh Circuit Court of Appeals explained that "[t]he causal nexus referenced by the third element [of a retaliation claim] may be shown through direct evidence, which is something akin to an admission by the employer ('I'm firing you because you had the nerve to accuse me of sex discrimination!')." 657 F.3d at 630.[6] Here, the Plaintiff asserts that "[Sally] flat out told Plaintiff it was being held to a different standard because of its imputed race." Pl. Br. 6. Sally's statement

---

[6] Courts no longer evaluate evidence by labeling it "direct" or "indirect," evaluating evidence as a whole instead. *See Ortiz*, 834 F.3d at 765–66 ("[Courts] must stop separating 'direct' from 'indirect' evidence and proceeding as if they were subject to different legal standards. . . . Instead, all evidence belongs in a single pile and must be evaluated as a whole."). Thus, this is perhaps an example of evidence under *Ortiz* that may be sufficient to show disparate treatment.

7

to the Plaintiff's owner, Moss, in relation to the Alder Street project, was that "[t]he issue is you're a woman and you're Black." Pl. Ex. 1 ¶ 15. Even if applying the retaliation standard at issue in *O'Leary* to a disparate treatment claim were proper, as argued by the Defendant and discussed more below, absent here is any factual showing that the Plaintiff was treated differently, held to a higher standard, or harassed other than conclusory statements in her affidavit. Consequently, the statement by Sally without more is insufficient to stave off summary judgment. *See King v. Ford Motor Co*., 872 F.3d 833, 840 (7th Cir. 2017) ("Summary judgment is not a time to be coy: conclusory statements not grounded in specific facts are not enough to stave off summary judgment." (cleaned up)).[7] Thus, the Court need not address the Defendant's arguments that Sally's statement is hearsay and that the Plaintiff's evidence should not be considered because it failed to answer the Defendant's interrogatories.

Third, the Plaintiff asserts that "the discrimination dealt with the Plaintiff's contract with the city." Pl. Br. 7. The Plaintiff adds that "[t]he city required Plaintiff to redo work on its projects with them, despite there being no violations. The city interrupted Plaintiff's work and closed down its projects without a basis. The city harassed its employees and denigrated their work." *Id*. (cleaned up). This, the Plaintiff argues, "is the exact type of situation that Section 1981 is meant to enforce-where a Black contractor is made to jump through multiple hoops and rings just to receive what it is contractually entitled to receive." *Id*. Again, however, the Plaintiff has not made a factual showing that Moss was treated differently, held to a higher standard, or harassed other than conclusory statements in her affidavit. As a result, the Court cannot conclude

---

[7] To the extent that there may be another part of the record where the Plaintiff connected Sally's statement to a specific adverse action, the Plaintiff waived any such argument by not raising it in the analysis sections in the summary judgment response brief. *See Waldridge*, 24 F.3d at 920 ("The parties, in turn, bear a concomitant burden to identify the evidence that will facilitate [the] [court's] assessment" of "whether there is any material dispute of fact that requires a trial.").

that the Plaintiff has offered evidence that would lead to the reasonable inference that the Defendant intentionally discriminated against the Plaintiff on the basis of its owner's race concerning the making or enforcing of a contract between the Plaintiff and the Defendant. *See King*, 872 F.3d at 840.[8]

The Plaintiff's fourth argument that it was singled out for worse treatment than other similarly situated non-Black general contractors again fares no better than its second and third arguments. To establish such treatment, "a plaintiff must show that members of the comparative group are directly comparable to her in all material respects." *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008) (cleaned up). However, the Plaintiff in this case "has not put forth any evidence of [contractors] outside of [Moss'] . . . protected class[] who acted in a materially similar manner but were treated more favorably." *Id*. "Indeed, [the Plaintiff] has failed to point the court to *any* other [general contractor] to serve as a basis for comparison." *Id*.

Instead, the Plaintiff points to Moss' statement in her affidavit explaining that Al Espinoza, a project manager for the Defendant, required that she repair subflooring and buff and wax the floors, which, according to her, was not within the scope of the contract. However, the statement is conclusory. The Plaintiff does not identify the specific contract, cite the terms of the contract it had with the Defendant, or otherwise specify what the scope of the contract included. *See Foster v. PNC Bank, Nat'l Ass'n*, 52 F.4th 315, 321 (7th Cir. 2022) (finding the plaintiff's affidavit statement "that he provided the proof of insurance to PNC by May 2011" conclusory when "he [did] not cite to any documentation or even specify how he provided PNC proof except to say that he spoke to PNC employees").

---

[8] To the extent that there may parts of the record where the Plaintiff provided this specific information, any such argument is waived for not raising it in the summary judgment response brief. *See Waldridge*, 24 F.3d at 920.

Rather, the Plaintiff appears to attempt to support Moss' contention that the work was outside the scope of the contract with another statement by Moss where she said, "I showed Mr. Espinoza the work of other contractors with the [Defendant] who had not been required to cure alleged defects; he agreed that I was being held to a different standard." Pl. Ex. 1 ¶ 45. But this statement by Mr. Espinoza is also conclusory because he does not explain what he meant by "being held to a different standard." And although the Plaintiff points to some photographs of what appears to be a job site, even if the photographs were admissible, they do not create a genuine dispute of material fact because the photographs do not provide any clarifying details about what Espinoza's statement meant.

In particular, the photographs purport to show another contractor's work, but as argued by the Defendant, there is no evidence as to when they were taken, the work that was required to be performed, the contractor that performed the work much less the race of the contractor, when the work was performed, or who inspected the work. *See* Pl. Ex. 1, Ex. B Thus, the photographs are not evidence from which a reasonable jury could infer that the Plaintiff was held to a different standard than other non-Black general contractors or was made to perform work outside the scope of its contract because the Plaintiff's owner is Black.

Even if the photographs constituted such evidence, as argued by the Defendant, the photographs are inadmissible because the Plaintiff did not disclose them during discovery. Rule 37(c)(1) provides that "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Rule 26(a)(1)(A)(ii) provides that "a party must, without awaiting a discovery request, provide to the other parties" "a copy—or a description by category and location—of all documents,

electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(ii). Here, pursuant to Rule 26(a)(1)(A)(ii), the Plaintiff was required to disclose the photographs of the other contractors' purported work during discovery. The Plaintiff does not dispute the Defendant's representation that the Plaintiff did not produce the photographs in discovery. Also, the Plaintiff does not provide a justification for the nondisclosure or a reason the nondisclosure was harmless. Accordingly, the Plaintiff is barred from using the photographs in support of its summary judgment response brief.

Therefore, the Defendant is entitled to summary judgment on the Plaintiff's § 1981 discrimination claim.[9]

## CONCLUSION

For the reasons set forth above, the Court hereby GRANTS Defendant's, City of East Chicago, Motion for Summary Judgment [ECF No. 36] and DENIES as moot the Defendant's Motion to Strike [ECF No. 51]. The Court DIRECTS the Clerk of Court to enter judgment in favor of the Defendant City of East Chicago and against the Plaintiff Primary Construction, Inc. on all claims in the Plaintiff's Complaint. The Plaintiff takes nothing by its Complaint.

SO ORDERED on August 16, 2024.

 s/ Theresa L. Springmann
JUDGE THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT

---

[9] Thus, the Court need not address the parties' arguments on the Plaintiff's failure to prosecute its case.